IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. _____ |
| CHAMELEON LLC and GARY V. LAYNE, | ) | |
| Defendants. | ) | |

# COMPLAINT

The United States of America, through its undersigned attorneys, by the authority of the Attorney General, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA") files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action under Section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) & (d). The United States seeks injunctive relief and civil penalties against Chameleon LLC ("Chameleon") and Gary V. Layne ("Layne") (collectively "Defendants") for the discharge of pollutants into waters of the United States in Hanover County, Virginia, without authorization by the United States Department of the Army, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

2. The property that is the subject of this Complaint ("the Site") is located at 10426 Ashcake Road, Ashland, Virginia 23005 and is identified in Exhibit 1.

3. In this action, the United States seeks to: (1) enjoin the unpermitted discharge of pollutants into waters of the United States at the Site, in violation of CWA Section 301(a), 33

1

U.S.C. § 1311(a); (2) require Defendants, at their own expense and at EPA's direction, to restore and/or mitigate the impacts of their unlawful activities; and (3) require Defendants to pay civil penalties as provided in CWA Section 309(d), 33 U.S.C. § 1319(d).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1345, and 1355, and CWA Section 309(b), 33 U.S.C. § 1319(b).

5. Venue is proper in the Eastern District of Virginia under CWA Section 309(b), 33 U.S.C. § 1319(b), and under 28 U.S.C. § 1391(b) and (c), because Defendant Chameleon's principal place of business is in this District, Defendant Layne resides in this District, the Site is located in this District, and the cause of action alleged herein arose in this District.

6. The United States is providing notice of the commencement of this action to the Commonwealth of Virginia as required by CWA Section 309(b), 33 U.S.C. § 1319(b).

## THE PARTIES

7. The United States Department of Justice is vested with the authority to bring this action on behalf of the United States of America under 28 U.S.C. §§ 516 and 519, and 33 U.S.C. § 1366.

8. Defendant Chameleon is a limited liability company incorporated in the Commonwealth of Virginia on June 21, 2010. Upon information and belief, Chameleon's principal place of business is located at 15226 Lazy Creek Road, Beaverdam, Virginia 23015. The sole officer and registered agent of Chameleon is Defendant Layne.

9. Defendant Layne is a private individual who resides and conducts business in the Eastern District of Virginia. Upon information and belief, Layne resides or at one time resided at 15250 Lazy Creek Road, Beaverdam, Virginia 23015.

10. At all times relevant to the Complaint, Defendants owned, leased, and/or otherwise controlled the Site and/or otherwise controlled the activities that occurred on such property.

## STATUTORY AND REGULATORY BACKGROUND

### A. Clean Water Act

11. The CWA's objective is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

12. CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters except in compliance with, *inter alia*, a permit issued under CWA Section 402 or 404, 33 U.S.C. §§ 1342 or 1344, or by other CWA provisions not applicable here. Strict liability applies under CWA Section 301(a), 33 U.S.C. § 1311(a).

13. CWA Section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the U.S. Army Corps of Engineers ("Corps"), to issue permits for the discharge of dredged and/or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

14. CWA Section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

15. CWA Section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, dredged spoil, rock, sand, and cellar dirt.

16. Federal regulations define "fill material" as any material that has the effect of replacing portions of the waters of the United States with dry land or changing the bottom elevation of a water of the United States. 40 C.F.R. § 232.2.

17. CWA Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the

waters of the United States, including the territorial seas."

18. 33 C.F.R. § 328.3(b) and 40 C.F.R. §§ 122.2 and 232.2 define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

19. CWA Section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

20. CWA Section 502(5), 33 U.S.C. § 1362(5), defines "person" to include "an individual [or] corporation."

21. No person may discharge fill material into wetlands that are waters of the United States without a permit—typically issued by the Corps—under Section 404(a) of the CWA, 33 U.S.C. § 1344(a).

22. CWA Section 309(b), 33 U.S.C. § 1319(b), authorizes the United States to commence a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA Section 301(a), 33 U.S.C. § 1311(a).

23. CWA Section 309(b), 33 U.S.C. § 1319(b), likewise authorizes the United States to commence a civil action for civil penalties against any person who violates CWA Section 301(a), 33 U.S.C. § 1311(a).

**FACTUAL BACKGROUND**

24. The real property on which the unauthorized discharges occurred (i.e., the Site) is located at 10426 Ashcake Road in Ashland, Hanover County, Virginia. The property is identified in the real property records of Hanover County as parcel ID # 7789-45-3668.

25. Prior to 2019, the Site was a forested, undeveloped parcel.

26. Chameleon purchased the Site on or about October 17, 2018. The Site comprises approximately 101.66 contiguous acres located immediately west of Highway I-95 and northeast of Ashcake Road.

27. Upon information and belief, at all times relevant to this Complaint, Defendants owned, controlled, and/or operated the Site.

**Aquatic Features Associated with the Site**

28. The Site contains at least 21 acres of impacted wetlands, which are adjacent to, and have continuous surface connections with, relatively permanent tributaries of traditional navigable waters.

29. EPA conducted an inspection of the Site from April 12, 2021, through April 14, 2021.

*Wetland A*

30. The main north-south wetland complex on the Site, identified in Exhibit 1 as "Wetland A," is adjacent to, abuts, and has a continuous surface connection to an unnamed tributary within the Site, which is a tributary to Lickinghole Creek.

31. The unnamed tributary described in the preceding paragraph is a relatively permanent tributary to Lickinghole Creek and is connected to Chickahominy River, which is a traditional navigable water.

32. The unnamed tributary to Lickinghole Creek is classified as "impaired" for recreation and "good" for aquatic life.[1] The unnamed tributary to Lickinghole Creek is covered by a Total Maximum Daily Load ("TMDL")—a calculation of the maximum amount of a

---

[1] https://mywaterway.epa.gov/waterbody-report/21VASWCB/VAP-G05R_SNF02A12/2022

pollutant allowed to enter a waterbody to meet water quality standards—to improve water quality in the Chickahominy River watershed. The tributary has relatively permanent flow within the Site. Both the unnamed tributary and Lickinghole Creek are mapped by the United States Geologic Survey in its StreamStats online mapping application and visible in the hillshade elevation data.[2]

33. Lickinghole Creek is a relatively permanent tributary of Stony Run. Stony Run is a relatively permanent tributary of the Chickahominy River, which is a traditional navigable water.

*Wetland B*

34. The eastern wetland complex on the Site, identified in Exhibit 1 as "Wetland B," is adjacent to, abuts, and has a continuous surface connection to a relatively permanent unnamed tributary to Campbell Creek on the eastern edge of the Site.

35. The unnamed tributary described in the preceding paragraph is a relatively permanent tributary of Campbell Creek and is connected to the Pamunkey River, a traditional navigable water. The unnamed tributary is visible in the United States Geologic Survey hillshade elevation data. Both the unnamed tributary and Campbell Creek are mapped in the Survey's StreamStats online mapping application.

36. The unnamed tributary flows east under I-95 to Campbell Creek, which is a relatively permanent tributary of Machumps Creek. Machumps Creek is a relatively permanent tributary of the Pamunkey River, a traditional navigable water.

*Wetland C*

37. The southern wetland complex on the Site, identified in Exhibit 1 as "Wetland C,"

---

[2] https://streamstats.usgs.gov/ss/; https://apps.nationalmap.gov/viewer/

is located in the drainage area of multiple relatively permanent unnamed tributaries.

38. Wetland C extends northwest to Ashcake Road and is adjacent to and has a continuous surface connection to a relatively permanent unnamed tributary to the unnamed tributary to Lickinghole Creek described in Paragraph 31.

39. As explained in Paragraph 33, Lickinghole Creek flows into the Chickahominy River, which is a traditional navigable water.

40. Wetland C is also adjacent to, abuts, and has a continuous surface connection to an unnamed relatively permanent tributary to the unnamed tributary to Campbell Creek described in Paragraph 35.

41. The unnamed tributary to Campbell Creek is visible in the United States Geologic Survey hillshade elevation data.[3]

42. As explained in Paragraph 36, Campbell Creek flows into the Pamunkey River, which is a traditional navigable water.

43. The Chickahominy River and the Pamunkey River are havens for fish, wildlife, and visitors who wish to fish, recreate, and/or experience the area's natural beauty.

**Unauthorized Discharges of Pollutants at the Site**

44. Beginning in early 2019, and continuing through at least August 2021, one or more of the Defendants and/or persons acting on their behalf conducted earthmoving activities on the Site, including but not limited to land-clearing, grubbing, ditching, sidecasting, and installing culverts, surface impoundments, and drainage pipes. That activity impacted approximately 80 acres of the Site, including approximately 21 acres of wetlands.

45. The activities described in the preceding paragraph, caused by one or more of the

---

[3] https://apps.nationalmap.gov/viewer/

Defendants and/or persons acting on their behalf, resulted in the unauthorized discharges of dredged and/or fill material into the wetlands on the Site.

46. The dredged or fill material that one or more of the Defendants and/or persons acting on their behalf caused to be discharged included, *inter alia*, dirt, spoil, rock, and sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

47. One or more of the Defendants and/or persons acting on their behalf used mechanized land-clearing and earthmoving equipment, including bulldozers, to accomplish these discharges. This equipment constitutes "point sources" as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

48. Defendants did not obtain a permit from the Secretary of the Army, acting through the Corps, for the discharges of dredged or fill material into waters of the United States as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.

**Virginia Department of Environmental Quality Notice of Violation**

49. On or about April 3, 2019, the Virginia Department of Environmental Quality ("VADEQ") received information of potential clearing and grubbing activities at the Site from the Hanover County Department of Public Works and the Virginia Department of Forestry ("DOF"), indicating that these activities may be impacting wetlands at the Site. DOF indicated to VADEQ, by letter dated March 29, 2019, that the timber harvesting was not consistent with normal forest management practices, and Hanover County indicated that the activities did not qualify for the forestry exemption from erosion and sediment control requirements.

50. On or about May 10, 2019, VADEQ personnel met Layne at the construction entrance to the Site. When VADEQ asked to enter the Site to look at the areas within the Site boundaries that the National Wetlands Inventory has identified as potential wetland areas, Layne

denied them entry and VADEQ left the Site.

51. On or about August 27, 2019, VADEQ obtained a warrant from the Circuit Court of Hanover County to inspect the Site. On or about August 30, 2019, VADEQ executed the warrant at the Site with a VADEQ enforcement manager, representatives from the Hanover County Sheriff's Office, and Layne. VADEQ staff proceeded to inspect the Property for the presence of surface waters subject to jurisdiction under the VADEQ Virginia Water Protection Program. The VADEQ Enforcement Manager encouraged Layne to stop any further land disturbance pending the results of the inspection and to manage any potential risk of a continuing violation at the Site.

52. Upon information and belief, on several occasions in the Fall of 2019, Layne and Chameleon began new timber harvesting activities in additional areas of the Site, including additional grubbing.

53. On or about October 9, 2019, VADEQ issued a Notice of Violation (NOV No. 1910-001174) to Layne and Chameleon, notifying them that the observed impacts to forested wetlands were not authorized and that VADEQ intended to conduct additional investigations on the Site.

## United States' Investigation

54. On or about January 7, 2020, and February 21, 2020, the Corps' Norfolk District, Southern Virginia Regulatory Section, issued letters to Defendants, pursuant to its authority under Section 404 of the CWA, 33 U.S.C. § 1344, stating that VADEQ had made the Corps aware of unauthorized impacts to wetlands at the Site, and requested a response from Layne.

55. After Defendants did not respond to the Corps' letters, the Corps referred the matter to EPA.

56. On or about May 8, 2020, pursuant to its authority under Section 308 of the CWA, 33 U.S.C. § 1318(a), EPA sent a letter to Defendants at Layne's home address, which included (a) a notification that the Corps had referred the case to EPA, and (b) a Request for Information.

57. On or about May 29, 2020, Layne sent a response letter to EPA. The letter did not respond to EPA's questions but rather asserted that Defendants' activities did not violate the Clean Water Act.

58. On or about July 29, 2020, pursuant to its authority under Section 308 of the CWA, 33 U.S.C. § 1318(a), EPA sent another letter to Defendants at Layne's home address. This letter indicated that Layne's May 29, 2020 letter was not an adequate response to the Request for Information and requested that Layne respond to EPA's inquiries. This letter also included a request for site access to conduct an inspection and a Consent to Enter Property form for Layne to sign.

59. On or about September 3, 2020, Layne called the EPA supervisor, Andrew Dinsmore, Chief of the Safe Drinking Water Act & Wetlands Section, to indicate that he would be unable to respond to the July 29, 2020 letter because the letter had been delivered to his home, was left outside in the rain, and was therefore illegible. During that call, Dinsmore and Layne spoke about EPA's request to perform a site visit. Layne refused to allow EPA access.

60. On or about September 3, 2020, EPA mailed two additional copies of the July 29, 2020 letter to Layne's home address: one through U.S. Postal Service standard mail and another by certified mail. Defendants did not respond to those letters.

61. On or about November 6, 2020, an EPA inspector left a voicemail for Mr. Layne. Defendants did not return the EPA inspector's call.

62. On March 12, 2021, EPA requested an administrative warrant from this Court to visit and inspect the Site. This Court issued that administrative warrant on March 15, 2021. *See U.S. Environmental Protection Agency v. Chameleon LLC, et al.*, No. 3:21-mc-2 (E.D. Va. Mar. 15, 2021) (Dkt. 1-3).

63. On or about April 12, 2021, EPA served the administrative warrant on Defendants and initiated an inspection of the Site. Pursuant to that warrant, from April 12, 2021, through April 14, 2021, EPA conducted its inspection and identified the presence of aquatic resources discussed above, including wetlands, and to evaluate the impact to waters of the United States from Defendants' activities on the Site.

64. EPA's inspection concluded that wetlands were present and that Defendants had impacted at least 21 acres of wetlands (the "Impacted Wetlands").

65. Defendants continued to cause or be engaged in activities that resulted in unauthorized discharges of dredged and/or fill material to the Impacted Wetlands even after EPA's inspection and notification of inspection results.

66. The dredged and/or fill material Defendants discharged remains in place at the Site and continues to affect the Impacted Wetlands.

67. Defendants have not taken corrective action and/or provided compensatory mitigation for the losses to waters of the United States.

**COUNT I – VIOLATION OF THE CLEAN WATER ACT**

68. The United States re-alleges Paragraphs 1 through 67 and incorporates those allegations by reference.

69. Each of the Defendants is a "person" within the meaning of CWA section 502(5), 33 U.S.C. § 1362(5).

70. The Impacted Wetlands are "waters of the United States" within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7).

71. Through the activities described in this Complaint, Defendants and/or persons acting on their behalf caused dredged and/or fill material to be discharged into the Impacted Wetlands.

72. The dredged or fill material that Defendants caused to be discharged includes, *inter alia*, dredged spoil, rock, sand, and/or cellar dirt, all of which are "pollutants" within the meaning of CWA Section 502(6), 33 U.S.C. § 1362(6).

73. Defendants and/or persons acting on their behalf used mechanized land-clearing and earthmoving equipment to cause the discharges. These types of equipment are "point source[s]" within the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

74. Defendants did not obtain a permit from the Corps for the discharges of dredged and/or fill material into waters of the United States, as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344. Defendants were not authorized to discharge dredged and/or fill material into waters of the United States at the Site.

75. Defendants owned and/or otherwise controlled the property on which each unauthorized discharge of dredged and/or fill material into the waters of the United States occurred.

76. Defendants planned, conducted, directed, contracted for, supervised, and/or otherwise controlled and/or participated in the unauthorized activities at issue on the Site.

77. Defendants' activities at the Site resulted in the filling of the Impacted Wetlands, some or all of which constitute waters of the United States.

78. By engaging in unauthorized discharges of dredged and/or fill material into the

Impacted Wetlands, Defendants have violated and continue to violate CWA Section 301(a), 33 U.S.C. § 1311(a).

79. Each day that such dredged or fill material remains in place constitutes a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

80. Under CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), Defendants are subject to injunctive relief and civil penalties for violating CWA Section 301(a), 33 U.S.C. § 1311(a).

81. Unless enjoined, Defendants are likely to continue to allow dredged and/or fill material to remain in waters of the United States at the Site in violation of CWA Section 301, 33 U.S.C. § 1311.

**PRAYER FOR RELIEF**

The United States respectfully requests that this Court order the following relief:

1. That Defendants be permanently enjoined from discharging or causing the discharge of dredged or fill material or other pollutants into waters of the United States, except in compliance with the CWA;

2. That Defendants be enjoined to undertake measures, at their own expense and at the direction of EPA, to completely restore the Site and conduct mitigation for irreversible environmental impacts and/or temporal loss of aquatic resources;

3. That Defendants be assessed a civil penalty under CWA Section 309(d), 33 U.S.C. § 1319(d), for each day that Defendants have been in violation of CWA Section 301(a), 33 U.S.C. § 1311(a);

4. That the United States be awarded costs and disbursements, including expert witness fees, incurred in this action; and

5. That this Court grant the United States such other relief as the Court may deem just and proper.

        Respectfully submitted,

        TODD KIM
        Assistant Attorney General

        */s/ Amanda V. Lineberry*
        Sarah A. Buckley
        Va. Bar No. 87350
        Senior Attorney
        Amanda V. Lineberry
        Va. Bar No. 94862
        Trial Attorney

        U.S. Department of Justice
        Environment and Natural Resources Division
        Environmental Defense Section
        P.O. Box 7611
        Washington, DC 20044
        Buckley: (202) 616-7554
        Lineberry (202) 616-5376
        sarah.buckley@usdoj.gov
        amanda.lineberry@usdoj.gov

        JESSICA D. ABER
        United States Attorney

        */s/ Robert P. McIntosh*
        Robert P. McIntosh
        Virginia Bar Number 66113
        United States Attorney's Office
        919 East Main Street, Suite 1900
        Richmond, Virginia 23219
        Telephone: (804) 819-7404
        Facsimile: (804) 771-2316
        Email: Robert.McIntosh@usdoj.gov
        Attorney for the United States of America

        *Attorneys for the United States*